UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Amgen Manufacturing, Limited; Immunex
Rhode Island Corporation; and Amgen
USA, Inc.,

              Plaintiffs,

vs.

The Trustees of Columbia University in the
City of New York, a New York corporation,

              Defendant.

Civil Action No. 04-12626 (MLW)

**MEMORANDUM OF LAW IN SUPPORT OF COLUMBIA UNIVERSITY'S MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Dated:  January 4, 2005

Thomas F. Maffei (BBO #313220)
Scott McConchie (BBO #634127)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA  02210-2600
(617) 542-9900
(617) 542-0900 (fax)

Attorneys for the Trustees of Columbia
University in the City of New York

Of Counsel:   Wayne M. Barsky
Amanda Tessar
Gibson, Dunn & Crutcher LLP
2029 Century Park East
Los Angeles, CA 90067-3026
(310) 552-8500
(310) 551-8741 (fax)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   PRELIMINARY STATEMENT ..................................................................................1

II.  THE APPLICABLE LEGAL STANDARDS ........................................................3

     A.    The Affiliates Bear The Burden Of Pleading And Proving Subject Matter Jurisdiction..........................................................................................................3

     B.    This Court Has Discretion To Adjudicate Only Actual, Live Cases And Controversies ....................................................................................................3

     C.    In The Context Of Patent Declaratory Relief Actions, An "Actual Controversy" Requires An Objectively Reasonable Apprehension Of An Infringement Suit .........4

III.  THERE IS NO "ACTUAL CONTROVERSY" BETWEEN COLUMBIA AND THE AFFILIATES ...............................................................................................4

     A.    The Complaint Does Not Allege Any Express Threat Of Infringement ....................5

     B.    The Affiliates Fail To Allege Any Other Facts Sufficient To Establish An Objectively Reasonable Apprehension Of Suit ........................................................5

     C.    The Undisputed Extrinsic Evidence Of Columbia's Courtroom Representations Further Reinforces The Lack Of Any Actual Controversy......................................10

IV.  THE COURT SHOULD, IN ANY EVENT, DECLINE TO EXERCISE JURISDICTION IN VIEW OF THE '275 PATENT'S UNCERTAIN FUTURE...............12

V.  CONCLUSION..................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)....................................................1

*Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852 (Fed. Cir. 1999)................................6

*BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975 (Fed. Cir. 1993) ....................................4, 9

*CAE Screenplates, Inc. v. Beloit Corp.*, 957 F. Supp. 784 (E.D. Va. 1997)..............................10

*Capo, Inc. v. Dioptics Medical Prods., Inc.*, 387 F.3d 1352 (Fed. Cir. 2004)...........................13

*Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573 (Fed. Cir. 1993) ............................................3

*Cygnus Therapeutics Sys. v. ALZA Corp.*, 92 F.3d 1153 (Fed. Cir. 1996)..................................10

*EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996)......................................................4, 6

*GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479 (Fed. Cir. 1996) ...................................13

*Gen-Probe Inc. v. Vysis, Inc.*, 359 F.3d 1376 (Fed. Cir. 2004) ....................................................3

*Hewlett-Packard Co. v. GenRad, Inc.*, 882 F. Supp. 1141 (D. Mass. 1995).........................2, 10

*Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207 (7th Cir. 1980)............................................9

*Philips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,*
    57 F.3d 1051 (Fed. Cir. 1995) ...........................................................................................4

*Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111 (1962) ................................................12

*Public Serv. Comm'n of Utah v. Wyckoff Co.*, 344 U.S. 237 (1952).........................................13

*Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037 (Fed. Cir. 1995) ...........................................4, 14

*Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885 (Fed. Cir. 1992)....................................................4

*Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631 (Fed. Cir. 1991)...............................3, 4, 13

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995)....................4

*Teva Pharms. USA, Inc. v. Pfizer, Inc.*, No. Civ. A. 03CV10167RGS,
    2003 WL 22888848 (D. Mass. Dec. 8, 2003).....................................................................6

### <u>Statutes</u>

28 U.S.C. § 2201 ......................................................................................................................3

# I.
## PRELIMINARY STATEMENT

In this action, three corporate affiliates of Amgen, Inc. (the "Affiliates") bring suit against Columbia University, seeking declaratory relief with respect to the validity, enforceability and infringement of Columbia's '275 patent. The constitutional touchstone of this Court's declaratory relief jurisdiction is the existence of an *actual* case and controversy, which the Supreme Court has said requires a "definite and concrete" dispute between adverse parties, appropriate for immediate and definitive determination of their legal rights. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

Here, the Affiliates cannot meet their burden of establishing that such a "definite and concrete" dispute exists between them and Columbia. Even if all the factual allegations in the complaint are accepted as true, the Affiliates do not allege that Columbia has accused them of infringing the '275, or that Columbia has threatened to enforce the '275 patent against them.

Instead, the Affiliates claim of a "definite and concrete" controversy over the '275 patent is entirely derivative of the contractual relationship between non-party Amgen and Columbia. The Affiliates allege little more than that Columbia granted a patent license to Amgen, Columbia sought to have Amgen comply with its obligations to pay royalties, Columbia terminated the license agreement when Amgen failed to do so, and Columbia now refuses to promise that it won't sue the Affiliates for infringement of the '275 patent.

These facts fall far short of establishing that the Affiliates have an objectively reasonable apprehension that Columbia will now sue them for infringement of the '275 patent. That is particularly true when these facts are considered in tandem with the many unequivocal representations made by Columbia in open court to the effect that Columbia has no interest in litigating the '275 patent while that patent is in reexamination and reissue proceedings in the

1

Patent Office.  For example, Columbia expressly told this Court, in unqualified terms that are directly applicable to the Affiliates:

> *"I can also tell you that we don't understand the allegations of Mr. Ware and others that they are deeply concerned that we're going to file a lawsuit tomorrow or the next day or the next day on the '275 patent against their members of their corporate family.  I think we've done everything to communicate that the last place we want to be right now is anywhere in court until the Patent Office finishes its job."*

Oct. 6, 2004 Hearing Tr., at 104:3-24 (emphasis supplied) (Attachment B).[1]  Given these and the many additional representations recently made by Columbia, the Affiliates cannot have an objectively reasonable apprehension that Columbia will—despite its unequivocal and repeated representations in open court to the contrary—bring an infringement action against them on the '275 patent.

Even if this Court were to find that it has subject matter jurisdiction over the complaint, it should refuse to exercise that jurisdiction.  Pending before the Patent Office are reissue and reexamination proceedings on the '275 patent.  These proceedings could well result in the '275 patent ceasing to exist entirely, or with radically different claims.  Simply put, it makes no sense for the parties and the Court to go through the expensive and time-consuming exercise of adjudicating the validity, enforceability and infringement of the '275 patent *as it now reads* when the pending Patent Office proceedings may render that patent a nullity, or dramatically change the claims of that patent.

---

[1] The Court can and should take judicial notice of the representations made to the Court, and the papers filed, in the related MDL litigation.  *Hewlett-Packard Co. v. GenRad, Inc*., 882 F. Supp. 1141, 1155 n.17 (D. Mass. 1995) (judicial notice taken of representations not to enforce patent by patentee in related action).

## II.
## THE APPLICABLE LEGAL STANDARDS

**A.      The Affiliates Bear The Burden Of Pleading And Proving Subject Matter Jurisdiction**

The plaintiff has the burden of pleading facts sufficient to support the Court's exercise of subject matter jurisdiction. *See, e.g., Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). The facts in the complaint will be accepted as true only to the extent not controverted by the defendant. *See, e.g., id.* at 1583; *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 635 (Fed. Cir. 1991) ("We agree wholeheartedly that . . . subject matter jurisdictional facts must be pleaded, and proved when challenged . . ."). A defendant may challenge either the sufficiency of the pleading or the facts themselves. *See, e.g., Cedars-Sinai*, 11 F.3d at 1583-84. In determining whether the plaintiff has met its burden of proof with respect to subject matter jurisdiction, this Court may review evidence extrinsic to the pleadings. *See, e.g., id.* at 1584.

**B.      This Court Has Discretion To Adjudicate Only Actual, Live Cases And Controversies**

The Declaratory Judgment Act provides, in pertinent part:

> In a case of *actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration . . . .

28 U.S.C. § 2201 (emphasis added). Thus, the Court has jurisdiction over declaratory judgment actions *only* if there is an "actual controversy." *See, e.g., Gen-Probe Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1379 (Fed. Cir. 2004) ("The Declaratory Judgment Act only supports jurisdiction in the event of an 'actual controversy.'"); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed. Cir. 1996); *Spectronics*, 940 F.2d at 635. And even in the case of an "actual controversy" sufficient to confer jurisdiction, a district court may, in its discretion, decline to exercise such jurisdiction. *See, e.g., EMC*, 89 F.3d at 813 (courts should make "'a reasoned judgment whether the

3

investment of time and resources will be worthwhile'") (quoting *Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995)).

**C.    In The Context Of Patent Declaratory Relief Actions, An "Actual Controversy" Requires An Objectively Reasonable Apprehension Of An Infringement Suit**

To establish that an actual case or controversy exists in a patent declaratory relief action, the plaintiff must establish: (1) either an explicit threat, or other action by the patentee, that creates an objectively reasonable apprehension of an infringement suit; and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.  *See, e.g., Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995); *Philips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1052 (Fed. Cir. 1995).  Only the first prong of the foregoing test is at issue; for purposes of this motion, the Court may assume that the Affiliates would be able to meet the second prong.

The purpose this test is "to determine whether the need for judicial attention is real and immediate" in which case the federal courts have jurisdiction, or whether it is "prospective and uncertain of occurrence" in which case they do not.  *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993).  "The Declaratory Judgment Act was intended to protect threatened parties, not to drag a non-threatening patentee into court."  *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992).

**III.
THERE IS NO "ACTUAL CONTROVERSY"
BETWEEN COLUMBIA AND THE AFFILIATES**

As a matter of law, this Court lacks subject matter jurisdiction over the complaint because it fails to allege facts sufficient to establish a justiciable controversy between Columbia and the Affiliates.

## A.    The Complaint Does Not Allege Any Express Threat Of Infringement

The complaint does not allege that Columbia has ever asserted that any one of the Affiliates are infringing the '275 patent.  Indeed, the complaint does not allege that Columbia has ever asserted infringement of the '275 patent by *any* entity, including non-party Amgen, Inc. At most, the complaint asserts that Columbia took the position that non-party Amgen had a *contractual* obligation to pay royalties under the '275 patent, which falls far short of an express claim of infringement.

Indeed, in opposing Columbia's motion to the dismiss in the MDL litigation, Amgen argued that Columbia's covenant was not broad enough to divest the Court of subject matter jurisdiction because the covenant extended only to the named plaintiffs.  The Court rejected this argument and expressly noted that Columbia had not threatened—either directly or indirectly— to sue any of the Affiliates:

> Some of the plaintiffs contend that an actual case or controversy exists because Columbia's covenant not to sue does not cover the independent legal entities they call "affiliates."  *Columbia has not, however, implicitly or explicitly threatened to sue those entities.*

Nov. 5, 2004 Order, at p.28 (emphasis added).

## B.    The Affiliates Fail To Allege Any Other Facts Sufficient To Establish An Objectively Reasonable Apprehension Of Suit

In the absence of an express charge of infringement, the Federal Circuit will permit maintenance of a patent declaratory relief action where the patent owner's conduct "rises to a level sufficient to indicate an intent to enforce its patent, *i.e.,* to initiate an infringement action." *EMC*, 89 F.3d at 811 (internal quotation marks omitted); *see also, Teva Pharms. USA, Inc. v. Pfizer, Inc.*, No. Civ. A. 03CV10167RGS, 2003 WL 22888848, at *4 (D. Mass. Dec. 8, 2003) (no reasonable apprehension of suit absent either explicit threats or conduct by the patent owner

"indicating the imminence of a lawsuit") (citing *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 855 (Fed. Cir. 1999)).

Here, the Affiliates seek to base this Court's jurisdiction on a patchwork of allegations pertaining exclusively to Columbia's *contractual* relationship with non-party Amgen. These facts are alleged by the Affiliates in paragraph 75 of the complaint, and analyzed below.

**Royalties on Original Axel Patents.**  In paragraph 75(a), the Affiliates allege that Columbia has made demand upon non-party Amgen, Inc. for the payment of royalties "based on the expired prior issued Axel patents." This allegation has nothing to do with the '275 patent. By its terms, it relates *solely* to the three original Axel patents, now expired, and cannot support any objectively reasonable claim of "apprehension" that Columbia is going to enforce the '275 patent against the Affiliates.

Even more fundamentally, the Affiliates allege in this paragraph that Columbia has sought to enforce its *contractual* rights with non-party Amgen. The Affiliates were never parties to that contract, and they do not allege otherwise. The Affiliates were within the scope of the license granted to Amgen, but only non-party Amgen ever had a royalty obligation to Columbia under the license agreement.[2] Thus, Columbia's insistence that Amgen abide by its *contractual* commitments cannot give rise to any reasonable apprehension of a suit for infringement by corporate affiliates of Amgen, none of whom was a party to that agreement.

**Royalties On Patent Applications.**  Similarly, the Affiliates allege in paragraph 75(b) that Columbia asserted that Amgen, Inc. owed royalties based on patent applications pending after

---

[2]  *See* License Agreement, at § 3(a)-(g). The Amgen and Immunex License Agreements are attached as Exhibits D and E to the Affiliates' Complaint.

August 16, 2000. Whether or not non-party Amgen had that contractual obligation to Columbia, no assertion has been made—nor could it be—that the Affiliates ever had such an obligation. Nor can the Affiliates meet their burden of proving that they fear an immediate lawsuit by Columbia for infringement of an issued patent by pointing to communications between Columbia and their corporate parent about *royalty obligations* based on a pending patent application. That is particularly true here, where it is undisputed that Columbia long ago unequivocally disclaimed any right to recover royalties from any licensee on the basis of patent applications pending after August 16, 2000.[3]

***Breach of Contract.*** In paragraph 75(c), the Affiliates allege that Columbia asserted non-party Amgen's breach of the license agreement based upon a failure to pay royalties. As noted above, the fact that Columbia asserted that Amgen was in breach of its license agreement by failing to pay royalties cannot support any claim by affiliates of Amgen that they fear an immediate infringement suit by Columbia under one of patents licensed thereunder.

This would be true even if Columbia had asserted that Amgen had a royalty obligation under the '275 patent. The fact that Columbia may have been willing, in the past, to urge Amgen's compliance with its *contractual obligation* to pay royalties under the '275 patent does not mean that today Columbia intends to bring an *infringement action* on the '275 patent against corporate subsidiaries of Amgen.[4]

---

[3] *See* Letter dated March 9, 2004, attached as Exh. A.

[4] There are, of course, many reasons why a patent owner would seek to procure compliance with a contractual patent royalty obligation, but *not* be willing to bring a patent infringement action upon the termination of that contract. As this Court has observed, patent litigation can be extremely expensive. Additionally, one of the well-known risks of an infringement action

[Footnote continued on next page]

**Scope of Amgen's License.**  In paragraph 75(d), the Affiliates allege that Columbia told Amgen, Inc. that it was *licensed* under the '275 patent.  This fact is obviously *inconsistent* with any claim of reasonable apprehension by the Affiliates.  It is undisputed that Amgen became *automatically* licensed under the '275 patent upon that patent's issuance, for no reason other than that it was within the bundle of defined "Licensed Patent Rights" granted to Amgen in paragraph 1(b) of the License Agreement.  Thus, an assertion that non-party Amgen is *licensed* under the '275 is not tantamount to an assertion that Amgen's activities would infringe the '275 patent in the absence of a license, nor do the Affiliates claim otherwise.

**Unspecified "Notification" to Immunex.**  The Affiliates claim, in their hopelessly vague paragraph 75(e), that Columbia gave non-party Immunex some unspecified "notification" regarding the '275 patent.  The paragraph goes on to claim that Columbia provided a copy of a district court decision regarding one of the *original* Axel patents (not the '275 patent), and that Columbia indicated that "in certain instances" (these instances are not, however, specified in the complaint) Columbia would "reluctantly be forced to consider alternative approaches," although what those approaches might be, or even what they would be an alternative to, is not specified.

**Counterclaims Against Non-Parties.**  In paragraph 75(f), the Affiliates assert— erroneously—that Columbia filed counterclaims against non-parties Amgen and Immunex, "alleging that their activities are covered by one or more claims of the '275 patent."  In fact, the '275 patent is mentioned *nowhere* in any of Columbia's counterclaims against Amgen and Immunex, nor is there any allegation that any activities of Amgen or Immunex are "covered" by

---

[Footnote continued from previous page]

is that, unlike a suit to enforce a contractual royalty obligation, it puts the validity of the patent in question.

any patent at all, let alone the '275 patent. This is not a *factual* allegation that can be accepted as true for purposes of this motion, since all this sentence purports to do is characterize (inaccurately) the contents of a filing in this Court.

   ***Termination Of License And Scope Of Covenant Not To Sue.*** Finally, the Affiliates allege in paragraph 75(g) that Columbia's termination of Amgen's license agreement also terminated whatever rights the Affiliates enjoyed under that agreement, and further allege in paragraph 75(h) that Columbia refused to extend the covenant not to sue to the Affiliates.[5] The fact that a patentee refuses to promise not to sue a third-party does not give rise to a reasonable apprehension that the patentee *will* sue for infringement. *See, e.g., BP Chems.*, 4 F.3d at 980 (rejecting argument that a patentee's refusal to promise not to enforce its patent gave rise to a reasonable apprehension of suit).[6] The Federal Circuit has made clear that even "understandabl[e] concern[s]" about such future litigation are insufficient to support subject matter jurisdiction. *Hewlett-Packard*, 882 F. Supp. at 1156; *Cygnus Therapeutics Sys. v. ALZA Corp.,* 92 F.3d 1153, 1159-60 (Fed. Cir. 1996), *overruled on other grounds sub nom*

---

[5]  The Affiliates reiterate in this paragraph the same, demonstrably false allegation made in the preceding paragraph 75(f) (discussed above), namely, that Columbia's counterclaims assert that Amgen's activities are covered by one or more claims of the '275 patent.

[6]  *See generally Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1213-14 (7th Cir. 1980) ("[Declaratory judgment plaintiff] cannot require [patentee] to review its designs for possible patent infringement and [patentee's] refusal to grant patent clearance cannot create a reasonable apprehension . . . . [Declaratory judgment plaintiff's] argument would result in a requirement that a patentee grant clearance to a competitor's design upon request or, by its refusal to do so, create declaratory judgment jurisdiction. A reasonable apprehension could thus be created by a patentee's refusal to act. That is not the law and we decline to establish the rule for which [declaratory judgment plaintiff] argues."); *CAE Screenplates, Inc. v. Beloit Corp.*, 957 F. Supp. 784, 791-92 (E.D. Va. 1997) ("[O]bjective, reasonable apprehension cannot be based upon the patentee's failure to provide binding and absolute reassurances. In other words, [the patentee's] refusal to acquiesce immediately to [the declaratory judgment plaintiff's] demands for immunity and a royalty-free license does not create a justiciable controversy.").

*Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed. Cir. 1998) (affirming dismissal of declaratory judgment action where the patent owner informed the putative infringer that the patent-in-dispute had emerged from reexamination, declined to enter into a license arrangement, and made statements to investment analysts about the patentee's "very strong proprietary position" in the patent).

Collectively, the Affiliates' allegations add up to no more than the following unremarkable facts:

- Columbia has in the past, asserted contractual rights to the payment of royalties by non-party Amgen;

- Columbia has, in the past, sought Amgen's voluntary compliance with its contractual obligations;

- After being sued by Amgen, Columbia exercised its contractual right to terminate non-party Amgen's license agreement; and,

- After being sued by non-party Amgen, Columbia asserted counterclaims against Amgen for its failure to pay contractual royalties.

Simply put, it would not be objectively reasonable to infer from these facts, all of which pertain to Columbia's contractual relationship with non-party Amgen, that Columbia now intends to initiate a patent infringement action against the Affiliates. And even if it were, Columbia's recent, repeated representations to this Court—discussed in detail below—would vitiate any such objectively reasonable apprehension.

**C.    The Undisputed Extrinsic Evidence Of Columbia's Courtroom Representations Further Reinforces The Lack Of Any Actual Controversy**

Aside from the shortfalls in the complaint detailed above, there are undisputed facts which wholly undermine any assertion by the Affiliates that they are reasonably in fear of an imminent enforcement action by Columbia under the '275 patent. Specifically, Columbia has made numerous and unequivocal statements to this Court, in the context of the related MDL

litigation, to the effect that Columbia has no interest in litigating over the '275 patent during the

pendency of reexamination and reissue proceedings in the Patent Office.  These representations

include at least the following statements:

- "[W]e do not want to be in court litigating about the '275 patent until the Patent Office has finished its work."  Oct. 6, 2004 Hearing Tr., at 108:10-12, relevant excerpts attached as Exhibit B.

- "I can also tell you that *we don't understand the allegations of Mr. Ware and others that they are deeply concerned that we're going to file a lawsuit tomorrow or the next day or the next day on the '275 patent against their members of their corporate family.  I think we've done everything to communicate that the last place we want to be right now is anywhere in court until the Patent Office finishes its job.*"  *Id.* at 104:3-24 (emphasis supplied).

- "The Patent Office decided it wants to reexamine the patent.  We filed an application for reissue.  *It is Columbia's desire not to be in litigation over the '275 patent until that process is over.  And even then, we would have to think hard about whether or not there will be any enforcement actions against anybody.*  Have to see what the claims look like.  Have to see if the products were covered by them."  *Id.* at 104:3-24 (emphasis supplied).

- "[W]e made a decision to basically end the litigation on the '275 patent.  *My client desires not to litigate about a patent when the Patent Office has said, we're not sure you should have ever gotten this patent in the first place. . . . We don't want to be fighting with anybody*.  We don't want them to be spending their money or us spending our money while the Patent Office says, thumbs up or thumbs down.  If the Patent Office says, thumbs down, then we're done.  If they say, thumbs up, we'll have to see what the thumb points to, because we don't know."  *Id.* at 113:4-22 (emphasis supplied).

Whatever apprehensions the Affiliates could reasonably have had from Columbia's

earlier assertions that Amgen had an obligation to pay royalties under the '275 patent, and was in

breach of its license agreement for failure to do so, must be viewed through the lens of these

later statements by Columbia.  Given the unequivocally peaceful and all-encompassing nature of

these public statements, the Affiliates cannot have an objectively reasonable apprehension that

Columbia is poised to bring an infringement action against them under the '275 patent.

11

**IV.**

**THE COURT SHOULD, IN ANY EVENT,
DECLINE TO EXERCISE JURISDICTION IN VIEW
OF THE '275 PATENT'S UNCERTAIN FUTURE**

Even if the Court were to find that there was an "actual controversy" between the

Affiliates and Columbia, it should decline to exercise its jurisdiction.  The Supreme Court has

made clear that the declaratory judgment jurisdiction of the federal courts is discretionary, not

mandatory:

> The Declaratory Judgment Act was an authorization, not a
> command. It gave the federal courts competence to make a
> declaration of rights, it did not impose a duty to do so. Of course a
> District Court cannot decline to entertain an action as a matter of
> whim or personal disinclination. A declaratory judgment, like
> other forms of equitable relief, should be granted only as a matter
> of judicial discretion, exercised in the public interest.

*Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (internal citations and

quotation omitted).  "When there is no actual controversy, the court has no discretion to decide

the case.  When there is an actual controversy and thus jurisdiction, the exercise of that

jurisdiction is discretionary."  *Spectronics*, 940 F.2d at 634.  A court may decline to exercise

jurisdiction over a declaratory judgment action if it has "well-founded reasons" and exercises its

discretion "in accordance with the purposes of the Declaratory Judgment Act and the principles

of sound judicial administration."  *Capo, Inc. v. Dioptics Medical Prods., Inc.*, 387 F.3d 1352,

1355 (Fed. Cir. 2004) (citations omitted).

Here, every single claim of the Affiliates' complaint is directed to the validity,

enforceability, or infringement of the '275 patent.  As this Court knows, the '275 patent is

currently being reexamined by the Patent Office, and there is, in addition, a pending reissue

proceeding in the Patent Office.  Whether any claims will ever emerge from the Patent Office, or

what they will look like if they do, is entirely uncertain.  Thus, any judgment that issues from

this Court on the validity, enforceability or infringement of the '275 patent is at significant risk of being an advisory opinion. *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 482 (Fed. Cir. 1996) ("The complaint alleged a dispute over the validity and infringement of a possible future patent not then in existence. The district court did not know with certainty whether a patent would issue or, if so, what legal rights it would confer upon Elk.  Thus, the dispute was purely hypothetical and called for an impermissible advisory opinion."); *see also, e.g., Public Serv. Comm'n of Utah v. Wyckoff Co.*, 344 U.S. 237, 239 (1952) ("The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.").[7]

In view of the substantial resources that will be required for this Court to render a judgment on the validity, enforceability and infringement of the '275 patent, and the risk that such efforts will be entirely for naught, this Court should decline to exercise its jurisdiction if the Affiliates succeed in establishing that such jurisdiction exists.  *Serco Servs.*, 51 F.3d at 1039 (Fed. Cir. 1995) (court may dismiss declaratory judgment action if its action is based on "a reasoned judgment whether the investment of time and resources will be worthwhile").

---

[7] This Court did not believe that such considerations warranted a stay of the related MDL proceedings, and denied Columbia's motion in that regard.  There, however, every one of the declaratory judgment plaintiffs before the Court had a license agreement with Columbia that included the '275 patent, and every one of the plaintiffs was seeking, *inter alia*, a judgment that it had no ongoing royalty obligations to Columbia under those agreements.  Here, none of the Affiliates has alleged any such licensing relationship with Columbia, and none has alleged any royalty obligation to Columbia.

**V.**
**CONCLUSION**

The Affiliates do not allege that Columbia has asserted that any one of them is infringing the '275 patent.  Nor do the Affiliates allege any facts which could give them an objectively reasonable fear that Columbia will bring suit against them for infringement of the '275 patent.

Far from rattling sabers, Columbia has made unequivocal, repeated statements in open court that it has no desire to be in litigation over the '275 patent while there are reexamination and reissue proceedings pending in the Patent Office.  Given the breadth of these statements, the Affiliates cannot meet their burden of proving that they have an objectively reasonable apprehension that Columbia is poised to bring an infringement suit against them on the '275 patent.

For these and the other reasons explained above, the Court should dismiss the complaint for lack of subject matter jurisdiction.  Alternatively, even if the Court finds that the Affiliates have met their burden of proving the existence of an "actual controversy," the Court should not exercise its jurisdiction given the pendency of Patent Office proceedings that could render any proceedings in this Court pertaining to the '275 patent a nullity.

Dated: January 4, 2005

Respectfully submitted,

THE TRUSTEES OF COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK

By its attorneys,

 /s/ Thomas F. Maffei
Thomas F. Maffei (BBO #313220)
Scott McConchie (BBO #634127)
Griesinger, Tighe & Maffei, LLP

Of Counsel:

Wayne M. Barsky
Amanda Tessar
Gibson, Dunn & Crutcher LLP
2029 Century Park East
Los Angeles, California 90067-3026
(310) 552-8500
(310) 551-8741 (fax)

60117851_8.DOC

**EXHIBIT A**



COLUMBIA UNIVERSITY SCIENCE AND TECHNOLOGY VENTURES

Engineering Terrace, Suite 363
Mail Code 2206
500 West 120th Street
New York, NY 10027, U.S.A.

212.854.8444 T
212.854.8463 F
stv.columbia.edu

March 9, 2004

**VIA CERTIFIED U.S. MAIL**
**RETURN RECEIPT REQUESTED**

Immunex Corporation
51 University Street
Seattle, Washington 98101
Attn: Scott Hallquist, Esq.
General Counsel

Dear Sir or Madam:

    This letter addresses your obligations under the license agreement dated October 1, 1991, between Columbia University and Immunex Corporation.

    Columbia for all time disclaims any right under the license agreement to collect a royalty from Immunex based on the existence of a pending patent application.

    To the extent you have paid a royalty under the license agreement based on the existence of a pending patent application, as opposed to an issued patent, please make an accounting of these payments to Columbia (with supporting documentation), and Columbia will refund the appropriate amount.

Very truly yours,

Michael J. Cleare, Ph.D.
Executive Director
Science and Technology Ventures

cc:    Amgen, Inc.
       One Amgen Center Drive
       Thousand Oaks, CA 91320
       Attn: General Counsel

       Immunex Corp.
       One Amgen Center Drive
       Thousand Oaks, CA 91320
       Attn: General Counsel

1099165

# EXHIBIT B

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


IN RE COLUMBIA UNIVERSITY          )   CA 04-01592
                                   )   Boston, MA
PATENT LITIGATION, ET AL           )   October 6, 2004
                                   )
                                   )


BEFORE THE HONORABLE MARK L. WOLF
UNITED STATES DISTRICT JUDGE


APPEARANCES:


(As previously noted.)


JUDITH A. TWOMEY, RPR
Official Court Reporter
One Courthouse Way
Courtroom 10~Room 5200
Boston, MA 02210
(617)946-2577

1    controversy as to them.  So I think this is pretty good

2    Federal Circuit authority for that.

3                I can also tell you that we don't understand the

4    allegations of Mr. Ware and others that they are deeply

5    concerned that we're going to file a lawsuit tomorrow or

6    the next day or the next day on the '275 patent against

7    their members of their corporate family.  I think we've

8    done everything to communicate that the last place we

9    want to be right now is anywhere in court until the

10   Patent Office finishes its job.  The Patent Office

11   decided it wants to reexamine the patent.  We filed an

12   application for reissue.  It is Columbia's desire not to

13   be in litigation over the '275 patent until that process

14   is over.  And even then, we would have to think hard

15   about whether or not there will be any enforcement

16   actions against anybody.  Have to see what the claims

17   look like.  Have to see if products were covered by them.

18               And keep in mind, for those companies that don't

19   have licenses, we have an obligation that plaintiffs made

20   clear in their papers that we have to approach companies

21   and offer them a license at a reasonable rate.  We do not

22   have permission to simply go out and file an infringement

23   action against anybody.

24               THE COURT:  Well, who's here who doesn't have a

25   license?  You're talking about the third parties.

1 not come running into court.  In other words --

2    THE COURT:  That was my Daylox (sic) decision.

3    MR. GINDLER:  That's another case.  I'm thinking

4 of EMC now.

5    THE COURT:  But EMC cites Daylox.

6    MR. GINDLER:  Right, it does.  But that's the

7 very proposition.  And so here, where are we?  Well, we

8 know we have a covenant on the '275 that covers the '275

9 as it currently reads forever.  You've also heard us say

10 previously that we do not want to be in court litigating

11 about the '275 patent with anyone until the Patent Office

12 has finished its work.

13    With those two things, I think it makes sense

14 for the court, in addition, to exercise its discretion

15 and not hear this case, because we've come a long way.

16 We didn't start this, as we told you.  We got sued.  The

17 only thing that happened before these suits started is

18 that letters were sent saying, here is the '275 patent.

19 We think it's covered.  And then starting in April of

20 2003, licensees began to sue us, Genentech and then Amgen

21 --

22    THE COURT:  Well, why did you send the letters

23 if you didn't want to put them on notice that they should

24 be concerned that you would enforce your alleged rights?

25    MR. GINDLER:  We sent the letter because we

113

1        MR. GINDLER:  I'm not going to open that issue

2    at all.  All I'm only saying to your Honor is that you've

3    only ever heard one side of this case.  For us, right

4    now, we made a decision to basically end the litigation

5    on the '275 patent.  My client desires not to litigate

6    about a patent when the Patent Office has said, we're not

7    sure you should have ever gotten this patent in the first

8    place.  That's a very hard decision to make because, as

9    your Honor knows, it has a significant economic

10    consequence for us.  We are giving up a very significant

11    amount of royalties which could be at issue.  We're doing

12    that.  That's a significant decision.  But we think it's

13    a responsible decision.  These plaintiffs came to us.

14    They said, you have significant problems with this

15    patent.  The Patent Office actually agrees.  So let's

16    have the Patent Office resolve it.  We don't want to be

17    fighting with anybody.  We don't want them to be spending

18    their money or us spending our money while the Patent

19    Office says, thumbs up or thumbs down.  If the Patent

20    Office says, thumbs down, then we're done.  If they say,

21    thumbs up, we'll have to see what the thumb points to,

22    because we don't know.

23        Thank you, your Honor.

24        THE COURT:  Would the plaintiffs like to reply

25    briefly?  Start by telling me why you didn't tell me that