UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Amgen Manufacturing, Limited; Immunex Rhode Island Corporation; and Amgen USA, Inc.,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>The Trustees of Columbia University in the City of New York, a New York corporation,<br><br>　　　　　Defendant. | Civil Action No. 04-12626 (MLW) |

**REPLY IN SUPPORT OF COLUMBIA UNIVERSITY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**


Dated:  February 1, 2005

Thomas F. Maffei (BBO #313220)
Scott McConchie (BBO #634127)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA  02210-2600
(617) 542-9900
(617) 542-0900 (fax)

Wayne M. Barsky
Amanda Tessar
Jacqueline G. Curnutte
Gibson, Dunn & Crutcher LLP
2029 Century Park East, Suite 4000
Los Angeles, CA  90067-3026
(310) 552-8500
(310) 551-8741 (fax)

Attorneys for the Trustees of Columbia University in the City of New York

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ................................................................................... 1

II. THE AFFILIATES HAVE NOT MET THEIR BURDEN OF
ESTABLISHING AN "ACTUAL CONTROVERSY" WITH COLUMBIA ................... 4

    A. It Is Undisputed That Columbia Has Never Explicitly Threatened The
Affiliates With Infringement.................................................................................. 5

    B. The Totality of the Circumstances Do Not Establish That The
Affiliates Are Under An Objectively Reasonable Apprehension Of
Imminent Suit........................................................................................................ 6

        1. The Affiliates Concede That A Lawsuit Is *Not* Imminent ......................... 7

        2. The Remaining Arguments Made By The Affiliates Are
Without Merit............................................................................................ 7

            a. Covenant Not To Sue.................................................................... 8

            b. Amgen's Royalty Obligations. ...................................................... 9

            c. Infringement Counterclaims. ........................................................ 9

            d. Sixth Claim for Relief................................................................. 12

III. ALTERNATIVELY, THE COURT SHOULD DECLINE TO EXERCISE
JURISDICTION OVER THE DECLARATORY JUDGMENT ACTION IN
LIGHT OF THE PENDING PTO PROCEEDINGS ...................................................... 11

IV. CONCLUSION............................................................................................................. 13

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
   846 F.2d 731 (Fed. Cir. 1988) .............................................................................................. 6

*BP Chems. Ltd. v. Union Carbide Corp.*,
   4 F.3d 975 (Fed. Cir. 1993) .................................................................................................. 8

*CAE Screenplates, Inc. v. Beloit Corp.*,
   957 F. Supp. 784 (E.D. Va. 1997) ........................................................................................ 8

*Capo, Inc. v. Dioptics Med. Prods., Inc.*,
   387 F.3d 1352 (Fed. Cir. 2004) ...................................................................................... 9, 12

*Dewey & Almy Chem Co. v. Am. Anode, Inc.*,
   137 F.2d 68 (3d Cir. 1943) ................................................................................................... 6

*Folden v. United States*,
   379 F.3d 1344 (Fed. Cir. 2004) ............................................................................................ 3

*Halleran v. Hoffman*,
   966 F.2d 45 (1st Cir. 1992) ................................................................................................... 3

*In re Columbia Univ. Patent Litig.*,
   343 F. Supp. 2d 35 (D. Mass. 2004) .............................................................................. 1, 5, 8

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Calif., Inc.*,
   248 F.3d 1333 (Fed. Cir. 2001) ............................................................................................ 8

*Minn. Mining & Mfg. Co. v. Norton Co.*,
   929 F.2d 670 (Fed. Cir. 1991) ............................................................................................ 12

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*,
   57 F.3d 1051 (Fed. Cir. 1995) .............................................................................................. 9

*Sallen v. Corinthians Licenciamentos LTDA*,
   273 F.3d 14 (1st Cir. 2001) ................................................................................................... 4

*Shell Oil Co. v. Amoco Corp.*,
   970 F.2d 885 (Fed. Cir. 1992) ........................................................................................ 9, 10

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ................................................................................................................ 7

## Table of Authorities
## (Continued)

Page(s)

*Teva Pharms. USA, Inc. v. Pfizer, Inc.*,
  -- F.3d --, 2005 WL 119890 (Fed. Cir. 2005) ............................................................... 2, 6, 7, 13

*Vanguard Research, Inc. v. Peat, Inc.*,
  304 F.3d 1249 (Fed. Cir. 2002) ......................................................................................... 10

## Rules and Regulations

Fed. R. Civ. Proc. 12(h)(3) .......................................................................................................... 3

I.

**PRELIMINARY STATEMENT**

Columbia granted Amgen, Inc. ("Amgen") an expansive covenant not to sue with respect to the '275 patent, and won a hard-fought motion to dismiss Amgen's and the other MDL plaintiffs' complaints against Columbia for declaratory relief with respect to the '275 patent. *In re Columbia Univ. Patent Litig.*, 343 F. Supp. 2d 35 (D. Mass. 2004). Columbia voluntarily extended the scope of this covenant on at least two occasions, in a focused effort to ensure that all claims pertaining to the '275 patent would be disposed of pending ongoing reexamination and reissue proceedings in the Patent Office ("PTO"). Columbia has, in addition, repeatedly and unequivocally announced its desire not to litigate any issues pertaining to the '275 patent with *any* party while the PTO proceedings are ongoing. These facts are not, and cannot, be disputed by plaintiffs in this action.

Against this undisputed background, Amgen Manufacturing, Ltd., Immunex Rhode Island Corp., and Amgen USA Inc. (collectively referred to as "the Affiliates") seek to persuade this Court that Columbia now intends to bring suit for infringement of the '275 patent against them. The Affiliates would have this Court believe that Columbia voluntarily gave up all potential claims against Amgen and all of the other MDL plaintiffs under the '275 patent as it currently reads, thereby terminating all such litigation, and in the wake of its success intends to sue the Affiliates for infringement of the '275 patent. All of Columbia's actions in recent months—including the motion to stay, the covenant not to sue, and the motion to dismiss—have been directed toward one end: staying or terminating the litigation that Amgen and the other MDL plaintiffs initiated pertaining to the '275 patent during the pendency of PTO proceedings that may affect the scope and vitality of that patent. Given these undisputed facts, the Affiliates' claimed apprehensions are simply not credible and cannot support the jurisdiction of this Court.

Among the many flaws in the Affiliates' Opposition, one stands out as particularly fatal. The Affiliates concede that Columbia is not be ready to bring suit "right now," but argue that they should not be required to stand by while Columbia reserves the right to sue them later, at a time and place of Columbia's choosing:

> Columbia's assertion that it does not intend to sue the Affiliates "right now" (Columbia Memo., p. 2) misses the mark; *it is precisely because Columbia does not want to sue the Affiliates "right now" but insists on the right to sue them later* for things they are doing "right now" that the Affiliates need a declaration.

Affiliates Opp'n, pp. 1-2 (emphasis supplied). This argument demonstrates a fundamental misunderstanding of controlling precedent. As this Court and the Federal Circuit have both noted, the declaratory judgment jurisdiction of this Court arises, if at all, only where a lawsuit is *imminent*. As recently as two weeks ago, the Federal Circuit reiterated this well-established, bedrock principle of justiciability in an unequivocal holding that wholly undermines the core position asserted by the Affiliates in opposing Columbia's motion.

In *Teva Pharms. USA, Inc. v. Pfizer, Inc.*, -- F.3d --, 2005 WL 119890 (Fed. Cir. 2005) ("*Teva*"), the Federal Circuit affirmed this Court's dismissal of a patent declaratory judgment action for lack of subject matter jurisdiction. The Federal Circuit specifically held that, to establish subject matter jurisdiction, the declaratory judgment plaintiff "must be able to demonstrate that it has a reasonable apprehension of *imminent* suit." *Teva*, -- F.3d at * 8 (emphasis in original).

Here, not only have the Affiliates failed to meet their burden of establishing that they have a "reasonable apprehension of *imminent* suit," as *Teva* explicitly requires, they in fact concede such a lawsuit is *not* imminent. *E.g.,* Affiliates Opp'n, at pp. 1-2 ("it is precisely because *Columbia does not want to sue the Affiliates "right now" but insists on the right to sue*

2

*them later…"), p. 13 ("these actions indicate Columbia's intent to enforce the '275 patent against any potential infringer, including Plaintiffs, *but at a time and in a court of its choosing*"), and p. 16 ("courts should not decline to exercise jurisdiction merely because the *patentee is not 'right now' prepared to sue*") (emphases supplied). This concession *alone* requires the granting of Columbia's motion to dismiss, but it is hardly the limit of the Affiliates' errors.

The Affiliates also rely heavily on Columbia's refusal to grant them a covenant not to sue, and argue that this signals Columbia's intent to pursue them for infringement of the '275 patent. As a matter of law, however, a patentee's refusal to grant a license or a covenant not to sue cannot create the reasonable apprehension necessary to support this Court's jurisdiction, even where the declaratory relief plaintiff is "understandably concerned" about the possibility of an infringement suit.[1]

The Affiliates also seek to rely upon Columbia's past assertions that their parent corporation—non-party Amgen, Inc.—had royalty obligations under the '275 patent, which the Affiliates claim (without any support) must have been based on the "activities" of the Affiliates. Even if that were true,[2] and even if this Court were inclined to overlook the fact that Columbia

---

[1] The Affiliates seek to make much of the undisputed fact that Columbia has not challenged subject matter jurisdiction as to Amgen's first lawsuit against Columbia. The lack of subject matter jurisdiction can never be waived, Fed. R. Civ. Proc. 12(h)(3), and may be challenged at any time, including after trial and even while a case is on appeal. *See, e.g., Halleran v. Hoffman*, 966 F.2d 45, 47 (1st Cir. 1992) ("A challenge to subject matter jurisdiction may be raised at any time, including for the first time on appeal."); *see also, e.g., Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject matter jurisdiction may be challenged at any time by the parties or by the court sua sponte."). The fact that Columbia has not *thus far* challenged the subject matter jurisdiction of this Court in the related MDL litigation is particularly irrelevant here, because this is a *separate* action involving *different* plaintiffs.

[2] The Affiliates make this assertion without tendering any supporting evidence whatsoever, and without having pleaded any facts in this regard. A court determines whether subject-

[Footnote continued on next page]

3

never made any such claim to the plaintiffs in this action (and in fact is not alleged to have ever had *any* communications with the Affiliates), an assertion that activities are royalty-bearing, or "covered" by a patent, are insufficient to confer declaratory judgment jurisdiction as a matter of law.

Finally, the Affiliates work very hard to paint Columbia as a saber-rattling aggressor in this litigation, notwithstanding the fact that it is Columbia that has been bending over backwards to try to bring all '275 patent-related litigation to an end for the past six months, it is Amgen that is withholding more than $100 million in past due royalties and interest it owes to Columbia, it is Amgen that filed a lawsuit against Columbia in the Central District of California last year, and it is Amgen's affiliates that have now filed yet another lawsuit against Columbia in the District of Massachusetts.

## II.

## THE AFFILIATES HAVE NOT MET THEIR BURDEN OF ESTABLISHING AN "ACTUAL CONTROVERSY" WITH COLUMBIA

Columbia and the Affiliates agree that an actual controversy, in the context of a patent declaratory relief action, can be shown either by establishing an explicit charge of infringement, or by showing other circumstances that create an objectively reasonable apprehension that the

---

[Footnote continued from previous page]
   matter jurisdiction exists at the time the action is commenced, looking to the plaintiff's well-pleaded complaint. *See*, *e.g.*, *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 21-22 (1st Cir. 2001). Indeed, the complaint alleges no more than that Amgen Mfg. makes Epogen (Epoetin alfa), Amgen USA sells Epogen and Enbrel (etanercept), and Immunex R.I. makes etanercept. Compl. ¶¶ 11-13. Nowhere in the complaint do the Affiliates allege that these products are made pursuant to the '275 patent, nor does the complaint allege that Columbia ever claimed that the manufacture or sale of any of these products either infringes or even is "covered by" the '275 patent. Indeed, the complaint is totally silent as to any linkage between the asserted activities of the Affiliates on the one hand, and the '275 patent or Columbia University on the other. Thus, the Affiliates' argument that Columbia has accused "the activities" of the Affiliates is entirely unsupported.

patent owner will bring suit for infringement. Affiliates Opp'n, p. 9. The Affiliates have not met their burden of proof under either approach.

### A. It Is Undisputed That Columbia Has Never Explicitly Threatened The Affiliates With Infringement

This Court has already found, as the Affiliates concede in their brief, that "Columbia has not . . . implicitly or explicitly threatened to sue *those entities* [the Affiliates]." Affiliates Opp'n, at 10 (quoting *In re Columbia Univ. Patent Litig.*, 343 F. Supp. 2d at 42). Nor do the Affiliates contest the fact that Columbia has never had any communications with any one of them with respect to the '275 patent. Instead, the Affiliates claim that Columbia has "expressly asserted that *Amgen's* activity is covered by one or more claims of the '275 patent, and has purported to terminate *Amgen's* license and then announced its intention to counterclaim for infringement." Affiliates Opp'n, at 10 (emphasis supplied).

First, the Affiliates' argument is based on the unsupported assumption, *supra*, n. 2, that whatever "activity" Columbia may have claimed was "covered by" the '275 patent in the MDL action involving Amgen is the "*exact same activity*" the Affiliates are currently engaged in. Affiliates Opp'n, at 10 (emphasis in original).

Second, even if the Affiliates' assumption were true, it would not amount to an explicit charge of infringement by Columbia, because it is undisputed that Columbia has never asserted to *anyone* that the Affiliates are infringing the '275 patent or otherwise threatened the Affiliates with an infringement lawsuit. The Affiliates try to blur the distinction between themselves and non-party Amgen, and between this case and the MDL action, by arguing that Columbia has asserted that their "activity" is "covered" by the '275 patent. While such assertions (if supported

5

by proper evidence) may be relevant to a "totality of the circumstances" analysis, they are not relevant to whether there has been an "explicit" charge of infringement.[3]

**B.      The Totality of the Circumstances Do Not Establish That The Affiliates Are Under An Objectively Reasonable Apprehension Of Imminent Suit**

In *Teva,* the Federal Circuit just two weeks ago affirmed this Court's dismissal of a patent declaratory relief action for lack of subject matter jurisdiction, and in so doing reiterated that the plaintiff must have an objectively reasonably apprehension of an "imminent" infringement suit by the patent owner:

> In order for this case to be one fit for judicial review, [plaintiff] must be able to demonstrate that it has a reasonable apprehension of *imminent* suit.  Whether there is an "actual controversy" between parties having adverse legal interests depends upon whether the facts alleged show that there is a substantial controversy between the parties "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (citation omitted).  This requirement of imminence reflects the Article III mandate that the injury in fact be "concrete," and "actual or imminent, not conjectural or hypothetical."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

*Teva*, -- F.3d at * 8 (emphasis in original).

---

[3] Thus, all of the case law cited by the Affiliates for the proposition that the patentee's litigation with a third party regarding the same activity may give rise to a reasonable apprehension of suit, and that in some instances, the patentee need not even communicate directly with a plaintiff to create a reasonable apprehension, pertains not to whether there has been an explicit charge of infringement, but rather whether the plaintiff has an objectively reasonable apprehension of suit. Affiliates Opp'n, at 10-11 (citing, *e.g.*, *Arrowhead Indus.*, 846 F.2d 731, 736 (Fed. Cir. 1988) (citing *Dewey & Almy Chem Co. v. Am. Anode, Inc.*, 137 F.2d 68, 71 (3d Cir. 1943)); *Teva Pharms. USA, Inc. v. Abbott Labs.*, 301 F. Supp. 2d 819 (N.D. Ill. 2004)); *see*, *e.g.*, *Dewey & Almy*, 137 F.2d at 70 (recognizing that defendant "never made any direct threat to sue Dewey & Almy," and turning to analysis of defendant's indirect conduct).

### 1.     The Affiliates Concede That A Lawsuit Is *Not* Imminent

Here, the Affiliates have not established that they have a reasonable apprehension of an immediate suit by Columbia for infringement of the '275 patent.  On the contrary, the Affiliates concede that no such lawsuit is imminent, but argue that they should be entitled to maintain their lawsuit despite that fact:

> Columbia's assertion that it does not intend to sue the Affiliates "right now" (Columbia Memo., p. 2) misses the mark; *it is precisely because Columbia does not want to sue the Affiliates "right now" but insists on the right to sue them later* for things they are doing "right now" that the Affiliates need a declaration.

Affiliates Opp'n, pp. 1-2 (emphasis supplied); *see also id.* at p. 16 ("courts should not decline to exercise jurisdiction merely because the *patentee is not 'right now' prepared to sue*") (emphasis supplied).

The Affiliates are therefore laboring under the misconception that subject matter jurisdiction exists because of their professed concern that Columbia may sue them in the future, "at a time and in a court of its choosing." *Id.* at 13.  *Teva* makes it clear that any such concern is insufficient as a matter of law to confer subject matter jurisdiction.  By conceding that "Columbia does not want to sue the Affiliates 'right now' but insists on the right to sue them later," the Affiliates admit that they cannot establish what the Federal Circuit requires to maintain a declaratory judgment suit: namely, "a reasonable apprehension of *imminent* suit," *Teva*, -- F.3d at * 8 (emphasis in original).  Here, as in *Teva*, subject matter jurisdiction is lacking and this action must accordingly be dismissed.

### 2.     The Remaining Arguments Made By The Affiliates Are Without Merit

In their attempt to establish the existence of an actual controversy with Columbia, the Affiliates focus on Columbia's refusal to grant them a covenant not to sue, Columbia's past

7

assertions that non-party Amgen had royalty obligations under the '275 patent and termination of the licensing agreement for failure to pay those royalties, and Columbia's prior statements in the course of the MDL litigation preserving its right to file infringement counterclaims. Even when combined, none of the conduct the Affiliates rely upon rises to the level of creating an objectively reasonable apprehension of "*imminent* suit."

          **a.**       **Covenant Not To Sue.**

The fact that Columbia did not extend the covenant not to sue in the MDL litigation to the Affiliates is insufficient—as a matter of law—to create a reasonable apprehension. *See*, *e.g.*, *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 980 (Fed. Cir. 1993) ("Although a patentee's refusal to give assurances that it will not enforce its patent is relevant to the determination . . . , this factor is not dispositive."); *CAE Screenplates, Inc. v. Beloit Corp.*, 957 F. Supp. 784, 791-92 (E.D. Va. 1997) (patentee's "refusal to acquiesce immediately to [the declaratory judgment plaintiff's] demands for immunity and a royalty-free license does not create a justiciable controversy."). Here, it was unnecessary for Columbia to extend the covenant to the Affiliates in the MDL action because they were not parties to that litigation. *In re Columbia Univ. Patent Litig.*, 343 F. Supp. 2d at 42; *see also Intellectual Prop. Dev., Inc. v. TCI Cablevision of Calif., Inc.*, 248 F.3d 1333, 1341-42 (Fed. Cir. 2001) (failure to extend covenant to non-party irrelevant in determining whether covenant divests court of jurisdiction, even though plaintiff may be required to indemnify that non-party if sued later by patentee). If the Affiliates were truly concerned about a possible infringement lawsuit, as they claim to have been, they had many months during which they could have moved to intervene in the MDL action, but chose not to do so. *Id.* (discussing possibility of joinder if non-party truly has interest in extension of the covenant not to sue).

8

### b. Amgen's Royalty Obligations.

To the extent that Columbia's interactions with non-party Amgen are relevant at all, asserting that an activity is covered by a license agreement and gives rise to a royalty obligation is not tantamount to asserting that the activity infringes the patent. This is a well-established principle of Federal Circuit law. In *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 889 (Fed. Cir. 1992), the Federal Circuit, in holding that no actual controversy existed between the parties, explained that a "[patentee's] use of language to indicate that [the declaratory judgment plaintiff's] activities 'fall within,' are 'covered by,' and are 'operations under' [the patentee's] patent fall short of alleging infringement." *See also Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1054 (Fed. Cir. 1995). Likewise, Columbia's termination of its licensing agreement with Amgen for failure to pay royalties based on activities "covered by" the license, was not tantamount to alleging patent infringement.

### c. Infringement Counterclaims.

The Affiliates seek to make much of Columbia's generalized statements during the MDL proceedings regarding the potential of future patent infringement counterclaims. These statements were never directed specifically to the Affiliates, nor do the Affiliates claim otherwise. Such counterclaims are, of course, mandatory in a declaratory judgment action for a declaration of non-infringement, *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1356 (Fed. Cir. 2004), and can hardly be viewed as creating an objectively reasonable apprehension by the *Affiliates* that Columbia will bring such a claim against them.[4] Although the Affiliates would

---

[4] *Shell Oil*, *supra*, presents a useful analogy in the context of a licensing negotiation. The declaratory judgment plaintiff in that case had approached the defendant for confirmation that its activities did not infringe the patent and that the patent was invalid, or alternatively,

[Footnote continued on next page]

like the Court to believe that Columbia is the aggressor, the undisputed fact is that Columbia has *never* initiated an infringement claim against *anyone* under the '275 patent, let alone the Affiliates or their parent company, Amgen.  In addition, the handful of counterclaim remarks the Affiliates rely upon all pre-date Columbia's numerous and unequivocal assurances (quoted at length in Columbia's moving papers) that it has no intention or desire to litigate the '275 patent during the PTO reexamination and reissue proceedings.[5]

### d.     Sixth Claim For Relief.

Finally, the Affiliates argue that even if the Court were to accept Columbia's jurisdictional arguments, the Sixth Claim would still remain.  Affiliates Opp'n, at pp. 17-19.  The Sixth Claim for Relief seeks a declaratory judgment that:  1) the '275 patent is not enforceable; and, 2) Columbia may not terminate the license agreement with non-party Amgen, Inc.  Compl.,

---

[Footnote continued from previous page]
   for a license.  The defendant patentee responded naturally by defending the validity of its patent and asserting that the plaintiff's activities were covered.  The Federal Circuit discounted those communications, seeing that the defendant patentee's communications were "reflexive and obligatory" rather than threatening.  *Shell Oil*, 970 F.2d at 889.  The Court should likewise discount Columbia's comments regarding possible infringement counterclaims.

[5] The Affiliates assert that the facts of *Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249 (Fed. Cir. 2002), "are analogous to this case."  Affiliates Opp'n, at p. 15.  In *Vanguard*, the patent holder had already sued the plaintiff for misappropriation of trade secrets regarding the patented technology, and had informed plaintiff's clients that the plaintiff was using patented technology without a license.  Despite the defendant's representation that it had no intention of brining an infringement claim, the court held that the plaintiff was under a reasonable apprehension because "[f]iling a lawsuit for patent infringement would be just another logical step in [the defendant's] quest to protect its technology."  *Id.* at 1255.  *Vanguard* is therefore hardly analogous to the Affiliates' situation.  Unlike the patent holder in *Vanguard*, Columbia has not taken any steps to protect the technology covered by the '275 patent, and in fact has clearly *renounced* its intention to enforce the '275 patent against *anyone* while PTO proceeding are pending.  Far from demonstrating a "quest to protect its technology," Columbia has shown a studied reluctance to do so.

10

¶ 105. With respect to the relief sought in regard to the enforceability of the '275 patent, that is an issue that would arise *only* as a defense to an infringement action by Columbia under the '275 patent, and is therefore in precisely the same category as the other claims for relief by the Affiliates, all of which seek a declaration as to the invalidity or non-infringement of the '275 patent.

As to the requested declaration that Columbia may not terminate the license agreement (in fact it already did so many months ago), Columbia noted repeatedly in its moving papers that the Affiliates are not parties to the license agreement, have no contractual relationship with Columbia whatsoever, and have no royalty obligation to Columbia. Consequently, there is no actual controversy between Columbia and the Affiliates regarding the license agreement with non-party Amgen, Inc., particularly when these facts are coupled with Columbia's stated intention not to enforce the '275 patent against any party at this time. Moreover, the notion that the Affiliates should be permitted to bring suit in federal court in their *own* name for a declaration that Columbia cannot terminate a contract, without ever joining as a party the *signatory* of that agreement (non-party Amgen, Inc.), while the *signatory* is itself seeking to pursue the *identical* claim in its own name in a separate action, is wholly without merit.[6]

### III.

### ALTERNATIVELY, THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THE DECLARATORY JUDGMENT ACTION IN LIGHT OF THE PENDING PTO PROCEEDINGS

A court may decline to exercise jurisdiction over a declaratory judgment action if it has "well-founded reasons" and exercises its discretion "in accordance with the purposes of the

---

[6] Even if this Court were to find that subject matter jurisdiction exists for this sliver of the Sixth Claim for Relief, it should decline to exercise any such jurisdiction for these reasons.

11

Declaratory Judgment Act and the principles of sound judicial administration." *Capo, Inc.*, 387 F.3d at 1355 (citations omitted). Should the Court determine that an actual controversy exists between the Affiliates and Columbia, it should decline to exercise jurisdiction in light of the pending reissue and reexamination proceedings before the PTO.

Amgen relies solely upon two Federal Circuit cases in arguing that this Court should entertain jurisdiction over this action. Affiliates Opp'n, pp. 16-17 (citing *Capo*, *supra*; *Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670 (Fed. Cir. 1991)("*3M*")). Both of these cases involve the fundamentally distinguishable situation where, unlike here, the patent owner *expressly charged the declaratory relief plaintiff with infringement*, and the district court *specifically found the existence of an actual case and controversy*, but nevertheless refused to exercise its declaratory judgment jurisdiction. *Capo*, 387 F.3d at 1353-54; *3M*, 929 F.2d at 672-73 (patentee also expressly charged customers with infringement). In both cases, the Federal Circuit specifically noted that the refusal to exercise jurisdiction was an abuse of discretion because it left an *accused infringer* without any avenue of redress.

Here, unlike both *Capo* and *3M*, Columbia has never even communicated with the Affiliates, let alone charged them or their customers with infringement. On the contrary, Columbia has made numerous, public statements that it has no intention of enforcing any of its existing rights under the '275 patent at this time against any party. Moreover, the pending PTO proceedings could well result in the '275 patent ceasing to exist in its current form or disappearing altogether, rendering any claimed dispute with the Affiliates entirely moot. The *Capo* and *3M* cases underscore precisely why this Court should elect *not* to exercise subject matter jurisdiction, should any such jurisdiction be found to exist.

12

**IV.**

**CONCLUSION**

The Affiliates have not met their threshold burden of establishing an objectively reasonable apprehension of imminent suit.  They concede that Columbia has never made an explicit charge of infringement against them, they concede that an infringement suit is not imminent within the meaning of *Teva*, and the totality of circumstances does not rise to the level of an actual, justiciable controversy.  Columbia has given repeated assurances in open court that it has no intention of enforcing the '275 patent *against anyone* while there are reissue and reexamination proceedings pending before the PTO.  For these and other reasons explained above and in Columbia's moving papers and exhibits, the Court should dismiss the complaint for lack of subject matter jurisdiction.  Alternatively, even if the Court finds that the Affiliates have established an "actual controversy," the Court should decline to exercise its jurisdiction over this declaratory judgment action in view of the pending PTO reexamination and reissue proceedings.

Dated:  February 1, 2005

                                               Respectfully submitted,

                                               THE TRUSTEES OF COLUMBIA UNIVERSITY
                                               IN THE CITY OF NEW YORK

                                               By its attorneys,

                                                /s/ Wayne M. Barsky

                                               Thomas F. Maffei (BBO #313220)
                                               Scott McConchie (BBO #634127)
                                               Griesinger, Tighe & Maffei, LLP

                                               Wayne M. Barsky
                                               Amanda Tessar
                                               Jacqueline G. Curnutte
                                               Gibson, Dunn & Crutcher LLP

60119164_1.DOC